# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| ALAN P. SASSEVILLE, | : Civil Action No.: |
| | : |
| Plaintiff, | : |
| | : |
| v. | : **COMPLAINT FOR DAMAGES** |
| | : **PURSUANT TO THE FAIR** |
| EXPERIAN INFORMATION | : **CREDIT REPORTING ACT, 15** |
| SOLUTIONS, INC., AND OCWEN | : **U.S.C. § 1681, ET SEQ.** |
| LOAN SERVICING, LLC | : |
| | : **JURY TRIAL DEMANDED** |
| Defendants. | : |
| | : |
| | : |

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit

and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. ALAN P. SASSEVILLE ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of EXPERIAN INFORMATION SOLUTIONS, INC. ("EXPERIAN") and OCWEN LOAN SERVICING, LLC ("OCWEN") (or jointly as "Defendants") with regard to erroneous reports of derogatory and negative credit information made by Defendants to national reporting agencies, and for failure of Defendants to properly investigate, and this conduct caused Plaintiff damages.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants took place in Nevada.

6. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011). Jurisdiction arises for Plaintiff's supplemental state claims under 28 U.S.C. § 1367.

9. This action arises out of each Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

10. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there, and the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, EXPERIAN has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

3

PARTIES

11. Plaintiff is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

12. Defendant OCWEN is a corporation doing business in the State of Nevada.

13. Defendant EXPERIAN is a national credit reporting agency, doing business in Nevada, with a principal place of business in Ohio.

14. Defendant OCWEN is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

GENERAL ALLEGATIONS

15. At all times relevant, Plaintiff was an individual residing within the State of Nevada.

16. At all times relevant, Defendants conducted business in the State of Nevada.

17. On or about 7/20/2009, Plaintiff filed for Bankruptcy in the United States Bankruptcy Court for the District of Nevada. Plaintiff's case was assigned Case Number 09-22882 (the "Bankruptcy").

18. The obligations ("Debt") to each Defendant herein (as applicable) were scheduled in the Bankruptcy and each respective creditor-Defendant, or its predecessor in interest, received notice of the Bankruptcy.

19. On or about 12/23/2014, Plaintiff received a Bankruptcy discharge.

20. None of the Defendants named herein filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq.*

21. None of the Defendants named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any *personal* liability.

22. Accordingly, the debts to each Defendant named herein (as applicable) were discharged through the Bankruptcy.

23. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any of the creditor-defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy protection (the "Petition").

24. Defendants named herein, and each of them, either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

25. Defendant's reporting post-Bankruptcy derogatory information was inaccurate and misleading in that Defendant continued reporting information based on Defendant's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the bankruptcy filing, thereby rendering the disputed information "inaccurate".

26. The adverse information reported by Defendants was based on each Defendant's improper enforcement of pre-bankruptcy obligations. Such enforcement was inaccurate, since after filing Chapter 13 Bankruptcy the Plaintiff's proposed (and eventually confirmed) Chapter 13 plan determined how each creditor-Defendant would be paid. Failing to report consistent with the terms of the Chapter 13 plan was therefore inaccurate.

27. Defendants named herein failed to report consistent with the terms of the Plaintiff's Chapter 13 Plan and thereby furnished inaccurate information as set forth herein.

28. Additionally, Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

29. To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA") publishes standard guidelines for reporting data called the "Metro 2 Format."

30. The Metro 2 Format guidelines for credit reporting are nearly identical for reports made during the "Months Between Petition Filed and BK Resolution" and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs. *See* CDIA Credit Reporting Resource Guide, page 6-20, 21.

31. Notably, the payment history and account status guidelines are the same, meaning that the "payment history" and "account status" should be reported the same way both during and after a bankruptcy proceeding. *Id.*

32. The only difference in reporting a pre-discharged debt and a discharged debt is to delete the balance (or report a balance of $0). *Id.*

33. Indeed, the guidelines direct furnishers to report an account status as it existed at the time the bankruptcy petition was filed and not the account status as it *would have* existed in the months following the filing of the petition if the petition had not been filed. *Id.*

34. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

35. Defendants did not conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below. To this end, the adverse reporting on the Plaintiff's report departs from the credit industry's own reporting standards and was therefore inaccurate under the CDIA's standards as well.

## OCWEN Misreported Credit Information

## RE: Account No. 7149

36. In an EXPERIAN credit report dated, April 7, 2015, OCWEN reported the following inaccurate, derogatory information:

- The account was 180 days past due in January 2010 – April 2011

- The account was 150 days past due in Nov 2011, December 2011, March 2012, April 2012

- The account was 120 days past due in June 2011 – August 2011, October 2011 and January 2012 – February 2012

- The account was 90 days past due in May 2011, June 2012- August 2012

- The account was 30 days past due January 2013 and March 2013

- A balance of $341,150 in the Account History for "Apr 13"

37. OCWEN should not have reported derogatory information on Plaintiff's account after 7/20/2009, because Plaintiff filed Bankruptcy on that date.

38. On or about May 11, 2015, Plaintiff disputed OCWEN's reported information regarding its reported obligation pursuant to 15 U.S.C. § 1681i(a)(2) by notifying EXPERIAN, in writing, of the incorrect and inaccurate credit information furnished by OCWEN.

39. Specifically, Plaintiff sent a letter, certified, return receipt, to EXPERIAN (the "Experian Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed as follows:

| Furnisher Name/Address: | Ocwen Loan Servicing<br>1661 Worthington Rd Ste 100<br>West Palm Beach, FL 33409 |
|---|---|
| Furnisher Acct. No.: | 7149…. |
| Consumer Dispute: | <ul><li>This account was discharged in my Bankruptcy which was filed on 7/20/2009 and discharged 12/23/2014, bearing docket No. 09-22882 in the District for Nevada. There should be no derogatory reporting after the filing date. Specifically, please remove the derogatory information for the following post-bankruptcy dates: Jan2010 – Apr2011 (180 days past due); May2011 (90 days past due); Jun2011 – Aug2011 (120 days past due); Oct2011 (120 days past due); Nov2011 and Dec2011 (150 days past due); Jan2012 and Feb2012 (120 days past due); Mar2012 and Apr2012 (150 days past due); Jun2012 – Aug2012 (90 days past due); Jan2013 and Mar2013 (30 days past due).</li><li>This account was discharged in my Bankruptcy which was filed on 7/20/2009 and discharged 12/23/2014, bearing docket No. 09-22882 in the District for Nevada. The balance on this account should be "$0" and the status should be reporting as "current". Specifically in the Account history you show Account Balances in Apr13 for $341,150.</li></ul> |

40. The Experian Dispute Letter further requested that EXPERIAN:

• Immediately delete this account and the disputed derogatory information my [Plaintiff's] credit report.

• The discharged debt should be reported with an account balance of $0 with a status of "current".

• Further, there should be no post-bankruptcy activity reported on this account. The date of last activity on this account should pre-

date my bankruptcy filing date, 7/20/2009, since a default on this account occurred no later than the Bankruptcy filing date.

• Any post-bankruptcy derogatory information should be immediately deleted from my report.

• If you do not immediately delete this from my credit report, please include a 100-word statement in my credit report of all of the disputed information contained in this letter regarding this account.

41. Upon information and belief, EXPERIAN timely notified OCWEN of Plaintiff's dispute, but OCWEN continued reporting derogatory information.

42. Defendants were required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

43. On or about June 30, 2015, Plaintiff received notification from EXPERIAN through its "reinvestigation" (Experian Report No. 0533-3684-34) that OCWEN and EXPERIAN received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6), and verified the account as "Updated".

44. Upon information and belief, upon receiving the Experian Dispute Letter, EXPERIAN notified OCWEN of the dispute.

45. OCWEN and EXPERIAN failed to conduct a reasonable investigation and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

46. Surprisingly, rather than remove the derogatory information from Plaintiff's report, OCWEN and EXPERIAN continued reporting the inaccurate

derogatory information on Plaintiff's report.    Specifically, OCWEN and EXPERIAN reported the following inaccurate, derogatory information:

- The account was 180 days past due in January 2010 – April 2011
- The account was 150 days past due in Nov 2011, December 2011, March 2012, April 2012
- The account was 120 days past due in June 2011 – August 2011, October 2011 and January 2012 – February 2012
- The account was 90 days past due in May 2011, June 2012-August 2012
- The account was 30 days past due January 2013 and March 2013

47. The false and inaccurate information was and continues to be furnished by Defendants.

48. OCWEN and EXPERIAN, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A).

49. OCWEN and EXPERIAN failed to review all relevant information provided by Plaintiff in the dispute to EXPERIAN, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

50. Due to OCWEN's and EXPERIAN's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's

information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

51. Plaintiff's continued efforts to correct OCWEN's and EXPERIAN's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with OCWEN and EXPERIAN were fruitless.

52. OCWEN's and EXPERIAN's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful.

53. OCWEN's and EXPERIANS's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

54. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, OCWEN and EXPERIAN failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 *ET SEQ*. (FCRA)**

55. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

56. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681.

57. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

58. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

### PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

### TRIAL BY JURY

59. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 18, 2015

Respectfully submitted,

By  /s/ David H. Krieger, Esq.
_____

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Las Vegas, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com
Attorney for Plaintiff